UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

ROBERT BRYANT,

      Plaintiff,

v.                              Civil Action No. 2:22-cv-00262

GESTAMP WEST VIRGINIA, LLC,

      Defendant.

MEMORANDUM OPINION AND ORDER

Pending is a motion for summary judgment filed by defendant, Gestamp West Virginia, LLC on May 4, 2023.  ECF 36. Also pending is a "Motion for Leave to File Surreply" filed by plaintiff, Robert Bryant, on June 1, 2023.  ECF 40.

I.   Background

Robert Bryant began working for Gestamp West Virginia, LLC, an automobile parts manufacturer in South Charleston, West Virginia, on or about December 18, 2015, as a Controls Engineer, working in defendant's Hot Stamp Department.  See ECF 36-4 Decl. of Elio Gonzalez ¶ 1.  Plaintiff was transferred to defendant's Cold Stamp Department in March 2016, where he focused his work on the B-2 line, which utilized Siemens equipment, and where he remained until his inclusion in a reduction in force in May

2020.  The Hot Stamp and Cold Stamp Departments are the two-sub departments within the Press Engineering Department, which works with machines and technology that cut and shape metal.  Id. ¶¶ 5-1, 6.

Beginning in March 2020, defendant partially shut down its operations due to the COVID-19 pandemic.  See ECF 36-7 Decl. of Scott Hughes ¶ 6.  During this time, defendant's corporate office implemented a 20% salary reduction for all salaried employees.  Id. ¶ 6(b).  In mid-to-late April 2020, due to reduced production and revenue projections, defendant's corporate office directed defendant "to implement a reduction in force and provided target numbers of salaried and hourly employees to retain."  Id. ¶ 6(c).  Defendant's corporate office instructed that the reduction in force be done not based on seniority, but instead, on "retaining the employees that would be most helpful to serve our customers' needs...."  Id.; ECF 36-1 Decl. of Chris Nottingham ¶ 11(c).

Defendant's management team then met to discuss "the number of salaried and hourly employees that would need to be laid off from each department, based on production needs and the staffing for the department."  ECF 36-7 Decl. of Scott Hughes ¶ 6(d); ECF 36-1 Decl. of Chris Nottingham ¶ 11(d).  During these meetings, defendant's management team directed its department

2

heads "to retain the staff that would allow the facility to timely deliver quality parts to our customers."  ECF 36-7 Decl. of Scott Hughes ¶ 6(d).

Defendant's management team determined that two employees from the Press Engineering Department, would be included in the reduction in force, which department was comprised of the following five salaried individuals: Sebastian Manzo and Diana Hernandez (age 26) as Controls Engineers in the Hot Stamp Department; Jamie Love (age 45) and the plaintiff (age 58) as Controls Engineers in the Cold Stamp Department; and Jason Barrett as a Process/Press Engineer in the Cold Stamp Department.[1]  ECF 36-7 Decl. of Scott Hughes ¶ 7; ECF 36-1 Decl. of Chris Nottingham ¶ 11(e); ECF 38-5.  Elio Gonzalez, who was employed as the Engineering Coordinator of the Press Engineering Department, and who reported to Press Operations Manager, Chris

---

[1]  The parties have not directed the court to any record evidence regarding the ages of Mr. Manzo or Mr. Barrett.  As for Ms. Hernandez's age, plaintiff in his response to defendant's motion for summary judgment, asserts she was age 26 at the time of the reduction in force.  ECF 38 at 1.  Defendant does not contest her age, and her age seems to be corroborated by "Gestamp West Virginia, LLC Layoff Separation Package" form which indicates an unnamed 26-year-old Controls Engineer was selected for the reduction in force.  See ECF 36-7 Decl. of Scott Hughes Ex. G. Defendant in its memorandum of law in support of summary judgment states Mr. Love was age 45 at the time of the reduction in force.  ECF 37 at 1.  Like Ms. Hernandez, Mr. Love's age appears to be corroborated by "Gestamp West Virginia, LLC Layoff Separation Package" form which indicates an unnamed 45-year-old Controls Engineer was not selected for the reduction in force. See ECF 36-7 Decl. of Scott Hughes Ex. G.

Nottingham, was responsible for supervising the Hot Stamp and Cold Stamp Departments.  ECF 36-4 Elio Gonzalez ¶¶ 1, 8.  Mr. Gonzalez was tasked with making the initial decision of which two salaried employees from his department would be selected for the reduction in force.  ECF 36-4 Elio Gonzalez ¶¶ 1, 8.

In determining whom to include in the reduction in force, Mr. Gonzalez concluded that to remain efficient, one controls engineer from the Hot Stamp Department and one controls engineer from the Cold Stamp Department would need to be retained along with its sole Process/Press Engineer, Jason Barrett.  See ECF 36-3 Depo. of Elio Gonzalez at 28:4-14; ECF 36-4 Decl. of Elio Gonzalez ¶ 13.

In the Hot Stamp Department, Mr. Gonzalez's decision to include Ms. Hernandez in the reduction in force was "regretful but easy."  ECF 36-4 Decl. of Elio Gonzalez at ¶13(b).  This was because Ms. Hernandez (age 26) had the least amount of experience, while Mr. Manzo "had the most experience of any Hot Stamp Engineer at any of the facilities in Gestamp North America and was an irreplaceable Engineer."  Id. Plaintiff also testified that Mr. Manzo had more experience than any other plant employee with the Hot Stamp.  ECF 36-5 Depo. of Robert Bryant at 130:7-9.

The decision on whom to include in the reduction in
force in the Cold Stamp Department was "difficult" as both
plaintiff (age 58) and Mr. Love (age 45) were "skilled Control
Engineers" who "were both very important to our operation."  Id.
¶ 13(c); see also ECF 36-3 Depo. of Elio Gonzalez at 29:20–30:3.
In coming to his decision, Mr. Gonzalez created a "decision
matrix tool" in chart form and spoke with Chuck Brown,
Maintenance Manager, and Mike Rusnak, Cold Stamp Production
Coordinator.  ECF 36-4 Decl. of Elio Gonzalez ¶¶ 14(a)-(d).
After comparing plaintiff and Mr. Love, Mr. Gonzalez concluded
that retaining Mr. Love would be more helpful to the Cold Stamp
Department due to his expertise in using the Allen Bradley
equipment that was predominate in that Department and due to his
troubleshooting abilities.  ECF 36-4 Decl. of Elio Gonzalez ¶¶
14-15.  It is noted that the Cold Stamp Department contained one
production line, the B-2 line, which utilized the Siemens
Equipment.  ECF 36-1 Decl. of Chris Nottingham ¶ 4.

Mr. Gonzalez then presented his recommendation of
including Ms. Hernandez and plaintiff in the reduction in force
to his supervisor Chris Nottingham and separately to Scott
Hughes, Human Resources Manager.  Id. ¶ 17.  Mr. Nottingham
discussed with Mr. Gonzalez the process he used to reach his
recommendations, and ultimately agreed with Mr. Gonzalez.  See

ECF 36-2 Depo. of Chris Nottingham at 21:11-23:7.  After consulting with Mr. Nottingham, Mr. Gonzalez notified Mr. Hughes that Ms. Hernandez and plaintiff had been chosen for the reduction in force.  See ECF 36-7 Decl. of Scott Hughes ¶ 8.

On May 8, 2020, Mr. Hughes met with plaintiff to inform him that he had been selected for the salaried employee reduction in force.  Id. ¶ 11.  Plaintiff was offered, but rejected, an hourly maintenance technician position in the Press Department.  Id.

Following his termination, plaintiff initiated this action on April 5, 2022, by filing his single count complaint, based on age discrimination in violation of the West Virginia Human Rights Act ("WVHRA"), in the Circuit Court of Kanawha County, West Virginia.  See ECF 1-1.  Defendant then removed this action and invoked the court's diversity jurisdiction under 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000 and the parties are completely diverse.  ECF 1 ¶ 11.

Presently before the court is defendant's motion for summary judgment (ECF 36) and supporting memorandum of law (ECF 37).  Defendant argues plaintiff cannot prove a prima facia case of age discrimination, and even if he can, defendant has provided a legitimate, non-discriminatory reason for plaintiff's inclusion in the reduction in force.

Plaintiff in his response opposing summary judgment claims he has shown a prima facia case of age discrimination, inasmuch as substantially younger employees, Mr. Love (age 45) and Ms. Hernandez (age 26) were retained over him (age 58).[2] Plaintiff also contends that defendant's legitimate, non-discriminatory reason for his inclusion in the reduction in force is merely pretextual.  See ECF 38.

Defendant's reply asserts that a plaintiff may not prove a prima facia case of age discrimination based solely on a difference in age and that plaintiff has presented no evidence that shows the legitimate, non-discriminatory reason for his inclusion in the reduction in force was merely pretextual.  See ECF 39.

Subsequently, on June 1, 2023, plaintiff filed the motion for leave to file a surreply, which is opposed by defendant.  See ECF 40, 41.

---

[2]  The parties disagree over whether Ms. Hernandez was included in the reduction in force.

## II.   Governing Standard


Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those necessary to establish the elements of a party's cause of action.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant.  Id.  The moving party has the burden of showing -- "that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial.  Fed. R. Civ. P. 56(c); id. at 322-23.  A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant.  Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party.  Anderson, 477 U.S. at 248.  Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute.  Overstreet v. Ky. Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).

A court must neither resolve disputed facts nor weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility. Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor.  Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

III.   Analysis

Plaintiff's single count complaint alleges his employment was terminated "because of his age in violation of the West Virginia Human Rights . . . . W. Va. Code § 5-11-9."  ECF 1-1 at ¶ 15.[3]  Section 5-11-9 prohibits discrimination based on, _inter_ _alia_, age, unless founded upon a bona fide occupational qualification.  W. Va. Code § 5-11-9.  Employment discrimination cases brought under the WVHRA, are analyzed under the burden shifting framework provided in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  <u>See</u> <u>Knotts v. Grafton City Hospital</u>, 237 W. Va. 169, 786 S.E.2d 188 (2016) (applying <u>McDonnell Douglas</u> standard to age discrimination claim brought under the WVHRA).

The first step of the <u>McDonnell Douglas</u> analysis is to determine whether plaintiff has made a prima facia case of employment discrimination.  <u>Woods v. Jefferds Corp.</u>, 241 W. Va. 312, 320, 824 S.E.2d 539, 548 (2019).  To prove a prima facia case of employment discrimination under the WVHRA, a plaintiff

---

[3]  Federal courts exercising jurisdiction through diversity of citizenship must apply state substantive law.  <u>Erie R.R. Co. v.</u> <u>Tompkins</u>, 304 U.S. 64, 78 (1938); <u>see</u> <u>also</u> <u>Stonehocker v. Gen.</u> <u>Motors Corp.</u>, 587 F.2d 151, 154 (4th Cir. 1978) ("[F]ederal courts are to apply the substantive law the State in which they are sitting would apply if the case had originated in a State court.").  In this instance, because the court's jurisdiction is based on diversity of citizenship, the court will consider relevant case law from the Supreme Court of Appeals of West Virginia.

must show: (1) he is a member of a protected class, (2) his employer made an adverse decision concerning his employment, and (3) but for plaintiff's protected status, the adverse employment decision would not have been made. Syl. Pt. 3, <u>Conaway v. Eastern Associated Coal Corp.</u>, 178 W. Va. 164, 358 S.E.2d 423 (1986). Courts have noted that the third prong of proving a prima facia case "will cause controversy," as "discrimination is essentially an element of the mind," and there will likely "be very little direct proof available." <u>Id.</u> at 170. Because of this, a plaintiff must only "show some evidence which would sufficiently link the employer's decision and the plaintiff's status as a member of a protected class so as to give rise to an inference that the employment decision was based on an illegal discriminatory criterion." <u>Id.</u> at 170-71. Indeed, the "but for" test "is merely a threshold inquiry, requiring only that a plaintiff show an inference of discrimination." <u>Barefoot v. Sundale Nursing Home</u>, 193 W. Va. 475, 484, 457 S.E.2d 152, 161 (1995).

If a plaintiff proves a prima facia case of discrimination, the burden then shifts to the defendant "to prove a legitimate, nonpretextual, and nonretaliatory reason for the discharge." Syl. Pt. 2, <u>Powell v. Wyoming Cablevision, Inc.</u>, 184 W. Va. 700, 403 S.E.2d 717 (1991). Under the "pretext

11

analysis" the plaintiff may then rebut the legitimate reasons presented by offering "evidence that the employer's proffered reason for the discharge is merely a pretext for the discriminatory act." <u>Id.</u>

A plaintiff may also prove a case of discrimination through a "mixed motive analysis." Such an analysis is applicable when "the employer articulates a legitimate nondiscriminatory reason for its decision which is not pretextual, but where the complainant demonstrates that a discriminatory motive nonetheless played a significant part in the employer's adverse decision against the complainant." <u>Mayflower Vehicle Systems, Inc. v. Cheeks</u>, 218 W. Va. 703, 714 (2006). If the plaintiff shows his protected status played a significant part in the adverse employment decision, "the burden then shifts to the employer to prove by a preponderance of the evidence that the same decision would have been made in the absence of the discriminatory motive." <u>Id.</u>

A.   <u>Plaintiff has proven a prima facia case of age</u>
     <u>discrimination</u>

Defendant concedes that plaintiff who, at age 58 was over the age of 40 at the time of his termination, is a member of a class protected by the WVHRA and was subject to an adverse

employment action.  The court finds plaintiff has satisfied the first and second elements needed to prove a prima facia case of age discrimination.  See ECF 37 at 12, 15.  Whether plaintiff has shown a prima facia case of age discrimination turns on whether plaintiff has shown "but for" his protected status, he would not have been subject to the adverse employment action.

Defendant contends that plaintiff has failed to prove a prima facia case of age discrimination, as plaintiff "cannot establish that, but for his age, he would not have been included in the reduction in force." ECF 37 at 12.  Defendant argues plaintiff must show that his qualifications were "plainly superior" to the substantially younger candidate to establish a prima facia case.  Id. at 13-15.  Because plaintiff fails to show his qualifications were "plainly superior," defendant claims that the only evidence plaintiff has presented to prove his prima facia case is evidence that he was older than Mr. Love which, defendant argues, based on the Supreme Court of Appeals' decision in Knotts v. Grafton City Hosp., 237 W. Va. 169, 786 S.E.2d 188 (2016), is insufficient as a matter of law.  Id. at 15-18.

Plaintiff maintains that the decision in Knotts, 237 W. Va. 169 (2016), stands for the opposite, and instead, its holding permits a plaintiff to prove a prima facia case of age

discrimination when evidence is presented that a substantially younger employee was retained instead of him.  ECF 38 at 8. Plaintiff also argues that West Virginia law does not require him to prove his qualifications were "plainly superior" in order to state a prima facia case of age discrimination.  Id. at 16-18.  Finally, plaintiff notes that he has shown a prima facie case of age discrimination inasmuch as, "the showing the plaintiff must make as to the elements of the prima facie case . . . is de minimis."  Id. at 7 (citing Taylor v. West Virginia Dep't of Health and Human Res., 237 W. Va. 549, 568, 788 S.E.2d 295, 314 (2016)).

In Knotts, the Supreme Court of Appeals clarified the requirements needed to make a prima facia case of age discrimination by adopting the "substantially younger" standard articulated in O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308 (1996).  The "substantially younger" standard replaced the "over 40/under 40" rule previously used in West Virginia to determine if the third prong of a prima facia case of age discrimination brought under the WVHRA had been stated.  The "substantially younger" standard examines the age of the plaintiff and comparator without considering whether the comparator is over the age of 40.  Knotts, 237 W. Va. at 178-80. The Supreme Court of Appeals reasoned under the newly adopted

14

standard that a plaintiff could prove a prima facia case of age discrimination under the WVHRA by showing he was "replaced by a 'substantially younger' employee." Id. at 179.  Thus, the "court's inquiry should be on whether the replacement or comparison employee was 'substantially younger' than plaintiff, not on whether the replacement or comparison employee was outside of plaintiff's protected class." Id.

In this instance, at the time of his termination, plaintiff was 58 years old, while the retained Mr. Love was 45 years old and Ms. Hernandez was 26 years old.[4]  Although the Supreme Court of Appeals has not "adopted a bright-line rule," it has noted that "'[a]ge differences of ten or more years have generally been held to be sufficiently substantial' to satisfy the 'substantially younger' rule." Knotts, 237 W. Va. at 180-81 (quoting Grosjean v. First Energy Corp., 349 F.3d 332, 336 (6th Cir. 2003)).  Because the age difference between plaintiff and Mr. Love is thirteen years, and they were both Controls

---

[4]  While plaintiff uses Ms. Hernandez as a comparator, the court focuses primary attention on Mr. Love as an appropriate comparator.  Though it is undisputed that Ms. Hernandez was designated as being included in the May 2020 reduction in force, the parties dispute the significance of this designation. Plaintiff maintains she was not actually included in the reduction in force and that she remained employed by defendant until January 2021, while defendant contends she was told she would be laid off if she could not find a transfer to another Gestamp facility.

Engineers in the Cold Stamp Department, the court finds that plaintiff has satisfied the "substantially younger" rule and has shown an inference of age discrimination.[5]

The court next considers defendant's contention that in order to state a prima facia case of age discrimination, a plaintiff must show that his qualifications were "plainly superior" to a substantially younger employee.

To support its position defendant cites to various cases from the Fourth Circuit and other district courts in the circuit.  ECF 37 at 13-15; see Heiko v. Colombo Sav. Bank, F.S.B., 434 F.3d 249 (4th Cir. 2006); Weaks v. North Carolina Dep't of Transp., 761 F. Supp. 2d 289 (M.D. N.C. 2011).  From these cases, defendant argues that to establish an inference of discrimination, plaintiff must show that his qualifications were "plainly superior" to those of the "substantially younger" employee.  Id.

Defendant's argument is misplaced as the cases cited by defendant do not concern the requirements needed for

---

[5] The court recognizes the Fourth Circuit's decision in Miller v. Terramite Corp., 114 Fed. App'x. 536 (2004), wherein the court stated a plaintiff "cannot demonstrate an inference of age discrimination from the mere fact that younger workers with less seniority were retained." Id. at 542.  In view of Knotts, the court is unpersuaded by this case as it is an unpublished opinion that was decided twelve years before Knotts.

establishing a prima facia case of discrimination.  For example, in Heiko, the qualifications of the plaintiff and the comparator were analyzed to determine whether the plaintiff had shown the defendant's explanation for the adverse employment action was pretextual.  434 F.3d at 259-62.  The court did not discuss whether a plaintiff must show superior qualifications in order to prove a prima facia case of discrimination.  Likewise, the issue in Weaks concerned whether the plaintiff had provided sufficient evidence to rebut the defendant's legitimate, nonpretexutal explanation for the adverse employment action. 761 F. Supp. at 298-310.

        The court finds plaintiff has stated a prima facia case of age discrimination.


              B.    **Defendant has provided a legitimate, non-discriminatory reason for terminating plaintiff**

        Because plaintiff has proven a prima facia case of age discrimination under the WVHRA, the applicable McDonnell Douglas burden shifting standard, now places "[t]he burden of production . . . [on] the defendant to proffer a legitimate, nondiscriminatory reason for the challenged employment action." Barefoot, 193 W. Va. at 483.

Here, defendant asserts plaintiff was chosen to be included in the reduction in force after plaintiff's immediate supervisor Mr. Gonzalez concluded that retaining "Mr. Love . . . would be more helpful for the operation of Cold Stamp in the aftermath of the COVID shutdown."  ECF 36-4 Decl. of Elio Gonzalez at ¶ 15.

In reaching this conclusion, Mr. Gonzalez spoke with other supervisors who worked with plaintiff and Mr. Love and created a "decision matrix" chart to help compare the two.  One supervisor, Mr. Rusnak, told Mr. Gonzalez that Mr. Love was more helpful to his team because "he spent more time on the floor, was better at troubleshooting, and was skilled at helping with all equipment, while [plaintiff] focused mostly on B-2."  ECF 36-8 Decl. of Mike Rusnak at ¶ 5.  Another supervisor, Mr. Brown, told Mr. Gonzalez that Mr. Love "was a great troubleshooter, and he had expertise with most of the equipment in the Cold Stamp department."  ECF 36-4 Decl. of Elio Gonzalez at ¶ 14(b)(i).

The court finds defendant has carried its burden of providing a legitimate, non-discriminatory reason for the adverse employment action taken against plaintiff.

C.   **Plaintiff has provided sufficient evidence to rebut defendant's legitimate, non-discriminatory reason for terminating plaintiff**

Inasmuch as defendant has provided a legitimate, non-discriminatory reason for including plaintiff in the reduction in force, the burden now shifts to plaintiff to rebut the proffered reason.

To do so, a plaintiff may proceed under a pretext analysis or mixed motive analysis.  Under a pretext analysis "a plaintiff is required to show, by a preponderance of the evidence, that the defendant's proffered reason was not the actual motivating force behind its adverse employment action." Moore v. Consolidation Coal Co., 211 W. Va. 651, 657 (2002).  A plaintiff may satisfy this burden "through direct or circumstantial evidence of falsity or discrimination; and when pretext is shown, discrimination may be inferred." Mayflower Vehicle Systems, Inc., 218 W. Va. at 714.  While under a mixed motive analysis the plaintiff must show "that a discriminatory motive played a significant part in the employer's adverse decision." Id.

For the reasons set forth herein, the court finds plaintiff has sufficiently rebutted defendant's proffered

legitimate, non-discriminatory reason for including plaintiff in the reduction in force.

Plaintiff points to a change in his Performance Development Plan ("PDP") as evidence to rebut defendant's proffered reason for his discharge.  A PDP is a yearly performance review, wherein an employee's director or supervisor evaluates an employee.  See ECF 36-7 Decl. of Scott Hughes at ¶ 5.  Typically, PDPs are issued in January or February and evaluate the employee for the previous year.  Id.  Plaintiff was given a PDP score of 3.48 by Mr. Gonzalez in January 2020 for the 2019 work year.  See ECF 36-4 Decl. of Elio Gonzalez Ex. B. In February 2020, Mr. Gonzalez issued Mr. Love a PDP score of 3.14 for the 2019 work year.  Id. Ex. A.

In deciding on whom to include in the reduction in force, Mr. Gonzalez completed in late April or early May 2020 "unofficial" PDP scores for Mr. Love and plaintiff for the 2020 work year.  Id. at ¶ 14 (d).  Mr. Gonzalez used different criteria in reaching the 2019 PDP scores and the "unofficial" 2020 PDP scores.  Id. at ¶¶ 10(e),14 (d).  Mr. Love's "unofficial" PDP score increased to 3.8, while plaintiff's score decreased to 3.2.  See id. Ex. C.  Plaintiff asserts that the "unofficial" 2020 scores were "fabricated" and that the change

from the 2019 scores is evidence of age discrimination.   ECF 38 at 14-15.

Plaintiff also argues he was given inaccurate information by defendant after being laid off which shows "Defendant was attempting to cover up age discrimination against" him.   See ECF 38 at 9-13.

Plaintiff contends that after being laid off defendant was required under the Age Discrimination in Employment Act ("ADEA") and 29 C.F.R. § 1625.22(f)(1) to provide him with a list of employees, their ages, and whether they were selected for layoff or retained.   Id. at 9.   Plaintiff argues that the ADEA disclosures he received from defendant contained "intentional misrepresentations" as Ms. Hernandez was listed as being "selected for lay off," despite her continuing to work for defendant until January 2021.   Id. at 9-10; see ECF 38-10 Layoff Separation Package.   Plaintiff also points out that Mr. Manzo and Mr. Barrett, who worked in Mr. Gonzalez's department and were subject to the layoff were "completely excluded" from the ADEA disclosures.   ECF 38 at 10.   Finally, plaintiff takes issue with four other employees who were listed in the ADEA disclosures as "laid off," "despite the fact they continued to work for defendant in hourly positions and were in fact not laid off."   Id.

Defendant disagrees with plaintiff's contentions surrounding the ADEA disclosures.  See ECF 39 at 10-13.  First, defendant generally asserts that the ADEA disclosures were not false.  Id. at 10.  As for Ms. Hernandez, defendant maintains that she was included in the May 2020 reduction in force, inasmuch as she was "affected" by the layoff.  Id. at 11.  The parties dispute that Ms. Hernandez was "affected" by the layoff inasmuch as defendant admits it allowed Ms. Hernandez to remain employed while she sought a transfer to another Gestamp facility in lieu of immediate termination due to her recent immigration from Mexico and her desire to relocate.  Id. at 11; see also ECF 36-1 Decl. of Chris Nottingham at ¶¶ 9(b), 19; ECF 36-4 Decl. of Elio Gonzalez at ¶¶ 9(c), 19.

Mr. Hughes, defendant's Human Resource Manager, stated that he omitted Mr. Manzo and Mr. Barrett from the ADEA disclosures inasmuch as he believed both were not considered for layoff by Mr. Gonzalez.  ECF 36-7 Decl. of Scott Hughes ¶ 10(a)(v).  Lastly, defendant points out that the four other employees who were listed as laid off, yet continued to work for defendant, were hourly employees who were "affected" by the layoff in that they were salaried employees who accepted hourly positions.  ECF 39 at 12.

22

It is also noted that there is record evidence which shows that following the May 2020 reduction in force, an employee was hired to work in the Press Engineering Department. During the deposition of Mr. Gonzalez, the transcript of which has been submitted by defendant in support of its motion for summary judgment, he testified that sometime after the May 2020 reduction in force, Roberto Rios was hired to work in the Press Engineering Department.  ECF 36-3 Depo. of Elio Gonzalez at 26:13-27:22.  Mr. Gonzalez speculated that Mr. Rios was "around 30" years old.  Id.  The parties dispute whether Mr. Rios was hired to "replace" plaintiff, and defendant has filed a motion in limine seeking to exclude speculative evidence that plaintiff was replaced.  See ECF 47.  In his response in opposition to defendant's motion in limine, plaintiff cites to the above referenced deposition testimony of Mr. Gonzalez, and claims it provides "clear evidence that Plaintiff was replaced by a younger employee."  ECF 51 at 3.

The court finds that due to the changes in the PDP scores in such a short period of time and the parties' disagreement over the ADEA disclosures provided to plaintiff, and the evidence submitted from the Gonzalez deposition that Mr. Rios was hired to work in the Press Engineering Department after the reduction in force, there are genuine questions of material

fact surrounding the validity of the "unofficial" PDP scores, defendant's ADEA disclosures, and the hiring of Mr. Rios that remain to be resolved.


IV.  Conclusion

Plaintiff has at least raised questions of material fact with respect to whether the reasons given for his inclusion in the reduction in force were pretextual.  The court finds there are genuine questions of material fact concerning defendant's process for deciding to include plaintiff in the reduction in force.  A reasonable jury could, upon review of the evidence, find defendant was laid off due to his age.

It is accordingly ORDERED that the motion for summary judgment (ECF 36) filed by defendant be, and it hereby is DENIED.  The court also ORDERS that plaintiff's motion to file a surreply (ECF 40) is unwarranted and is DENIED.

The Clerk is directed to transmit copies of this order to all counsel of record and any unrepresented parties.

ENTER: August 24, 2023

_____
John T. Copenhaver, Jr.
Senior United States District Judge